# EXHIBIT 6

**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001

Attorneys for Defendant
JPMorgan Chase & Co.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

DONALD TURNBULL,

        Plaintiff,

        v.

JPMORGAN CHASE & CO.,

        Defendant.

Case No. 21-cv-03217-JGK

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## JPMORGAN CHASE & CO.'S MOTION TO DISMISS THE AMENDED COMPLAINT

Sarah E. Bouchard (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001

Gina F. McGuire
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6100

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL & PROCEDURAL BACKGROUND ............................................................ 3

    I.      PLAINTIFF'S ALLEGATIONS AGAINST JPMORGAN ................................. 3

        A.      Plaintiff's Employment History. .......................................................... 3

        B.      The DOJ's Investigation of JPMorgan's Precious Metals Desk. ............... 3

        C.      Turnbull's Interviews with the DOJ. ................................................... 4

        D.      The DOJ August 2019 Indictment. ..................................................... 5

        E.      JPMorgan Interviews Plaintiff as Part of Its Internal Investigation and Terminates His Employment Based on Those Interviews and Its Review of Turnbull's Trades. ............................................................... 5

        F.      The DOJ November 2019 Superseding Indictment. ................................ 7

    II.     REDACTED

REDACTED

    III.    PLAINTIFF'S CLAIMS AND THE AMENDED COMPLAINT ..................... 11

LEGAL STANDARD ................................................................................................... 12

ARGUMENT ............................................................................................................... 12

    I.      PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT HIS PURPORTED PROTECTED ACTIVITY WAS A CONTRIBUTING FACTOR IN HIS TERMINATION, AND THUS FAILS TO STATE A PRIMA FACIE CLAIM UNDER SOX ............................................................. 12

        A.      Plaintiff Fails to Plead a Causal Connection Between His DOJ Interviews and His Termination. ....................................................... 13

        B.      Allegations Upon "Information and Belief" Are Insufficient to Meet Plaintiff's Burden to Show His DOJ Interviews Contributed to His Termination. ........................................................................... 14

    II.     PLAINTIFF'S CLAIM THAT HE WAS TERMINATED FOR PARTICIPATION IN A DOJ INVESTIGATION THAT JPMORGAN ITSELF COOPERATED WITH IS FACIALLY IMPLAUSIBLE. ................... 16

# TABLE OF CONTENTS
(continued)

REDACTED

B.  Turnbull's Allegations That JPMorgan's Termination Reason Was Pretextual Are Also Wrong and Implausible. ........................................... 17

III.  ALLOWING PLAINTIFF TO AMEND THE COMPLAINT AGAIN WOULD BE FUTILE. ....................................................................... 19

CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AJ Energy LLC v. Woori Bank*,
  829 F. App'x 533 (2d Cir. 2009) ....................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................12, 16, 17

*Bechtel v. Admin. Rev. Bd., U.S. Dep't of Labor*,
  710 F.3d 443 (2d Cir. 2013) .......................................................................................13, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................................12, 17

*Brown v. Colonial Sav. F.A.*,
  No. 16-cv-0884, 2017 WL 354246 (N.D. Tex. Jan. 23, 2017) ...............................................14

*Cellucci v. O'Leary*,
  No. 19-cv-2752, 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020) ...............................................14

*Charter Commc'ns., Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*,
  338 F. Supp. 3d 242 (S.D.N.Y. 2018) .............................................................................19, 20

*Douramanis v. Dur-Am. Brokerage Inc.*,
  No. 20-cv-5825, 2021 WL 961761 (S.D.N.Y. Mar. 15, 2021) ...............................................20

*Egan v. TradingScreen, Inc.*,
  No. 10-cv-8202, 2011 WL 4344067 (S.D.N.Y. Sept. 12, 2011) .............................................14

*Fraser v. Fiduciary Tr. Co. Int'l*,
  417 F. Supp. 2d 310 (S.D.N.Y. 2006) ............................................................................14

*Gallop v. Cheney*,
  642 F.3d 364 (2d Cir. 2011) ........................................................................................17

*Guitron v. Wells Fargo Bank, NA*,
  619 F. App'x 590 (9th Cir. 2015) .................................................................................20

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) .........................................................................................17

*Hemphill v. Celanese Corp.*,
  430 F. App'x 341 (5th Cir. 2011) ...............................................................................20

iii

*Houlahan v. Raptor Trading Sys., Inc.*,
  No. 16-cv-9620, 2018 WL 3231662 (S.D.N.Y. Feb. 12, 2018) ...............................................18

*Kim v. Boeing Co.*,
  487 F. App'x 356 (9th Cir. 2012) ......................................................................................20

*Neitzke v. Williams*,
  490 U.S. 319 (1989)............................................................................................................12

*Rimini v. JP Morgan Sec. LLC*,
  No. 18-cv-1031, 2018 WL 11229124 (1st Cir. Nov. 7, 2018)..............................................15

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)................................................................................................18

*Sullivan v. Barclays PLC*,
  No. 13-cv-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ..................................................8

*Tonra v. Kadmon Holdings, Inc.*,
  405 F. Supp. 3d 576 (S.D.N.Y. 2019) (Koeltl, J.) .......................................................12, 14, 18

*Villella v. Chem. & Mining Co. of Chile Inc.*,
  No. 15-cv-2106, 2017 WL 1169629 (S.D.N.Y. Mar. 28, 2017)................................................8

*Wallace v. Tesoro Corp.*,
  No. 11-CA-00099, 2017 WL 6403117 (W.D. Tex. Fed. 23, 2017)........................................20

*Wallender v. Canadian Nat'l Ry. Co.*,
  No. 13-cv-2603, 2015 WL 10818741 (W.D. Tenn. Feb. 10, 2015) ......................................20

**Statutes**

18 U.S.C. 1514A ................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 2, 12, 20

## PRELIMINARY STATEMENT

Plaintiff Donald Turnbull contends that he was wrongfully terminated under Section 806 of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A(a)(2), in retaliation for his participation in three interviews with the United States Department of Justice ("DOJ") in connection with the DOJ's investigation of unlawful trading in precious metals futures contracts on the JPMorgan Chase & Co. ("JPMorgan") precious metals desk. *See* Compl. (ECF No. 21) ¶ 149. The Complaint fails to plead a prima facie SOX claim, however, because it fails to plausibly plead that Turnbull's DOJ interviews were a contributing factor in his termination. Plaintiff also omits critical context regarding his trading activity, which was the sole basis for the termination decision. Both failures provide ample ground for dismissal under Rule 12(b)(6).

The crux of Plaintiff's claim is that, based on answers he purportedly gave in response to JPMorgan's questions during his October 7, 2019 internal interview, JPMorgan became "concerned" that he shared information harmful to JPMorgan during his DOJ interviews earlier in the year. *See id.* ¶ 2. Plaintiff goes on to assert that, following his October 7 interview, JPMorgan initiated and rushed a "faux inquiry" into his "unimpeachable" trading history, and pretextually terminated him on the basis that fourteen trades identified by JPMorgan "could be perceived as [unlawful]." *Id.* ¶¶ 9, 80. But the Complaint pleads no facts to support these contentions. It pleads no allegations regarding what Turnbull actually told the DOJ; no allegations that JPMorgan had actual knowledge of what Turnbull told the DOJ; and, as a result, no allegations supporting an inference that Turnbull was terminated because of his participation in the DOJ interviews.

The amendments to the original Complaint only serve to highlight these threshold deficiencies. Rather than adding allegations regarding his statements to the DOJ, or crucially, what he told JPMorgan about those statements, Plaintiff instead manufactures a series of allegations based on "information and belief" regarding what JPMorgan must have "believed" to

1

be true regarding his DOJ interviews. Compl. ¶¶ 96–105. This conclusory pleading is fatal to Turnbull's claim. The only causal connection alleged between Turnbull's DOJ interviews and his termination is pled solely upon "information and belief." This cannot withstand Rule 12(b)(6) scrutiny.



REDACTED

---

REDACTED

2



REDACTED

. Plaintiff hopes the unadorned allegations that he "answer[ed] every question" posed by the DOJ and was terminated months later are sufficient to state a claim for retaliation. Compl. ¶ 41. They are not. REDACTED

## FACTUAL & PROCEDURAL BACKGROUND[2]

### I.  PLAINTIFF'S ALLEGATIONS AGAINST JPMORGAN

#### A.  Plaintiff's Employment History.

Plaintiff began working for JPMorgan in 2005 as an analyst on JPMorgan's precious metals desk. Compl. ¶ 16. Precious metals include naturally occurring, high-value metals such as gold, silver, platinum, and palladium. *Id.* ¶ 25. Through the years, Turnbull held different positions and titles on the desk. In 2017, he was appointed as the Global Head of Precious Metals Trading and was promoted to Managing Director in 2018. *Id.* ¶ 19.

#### B.  The DOJ's Investigation of JPMorgan's Precious Metals Desk.

Turnbull alleges that by October 2018, the DOJ had begun to investigate the JPMorgan precious metals desk "for allegedly engaging in an illegal trading practice known as 'spoofing.'" *Id.* ¶ 22. As defined by the Amended Complaint, "spoofing" refers to a trader's placement of an order to buy or sell futures contracts with the intent to cancel that order before it is executed, in an

---

[2] The facts set forth herein reflect the facts as alleged in the Amended Complaint, except where otherwise stated. JPMorgan denies all allegations by Plaintiff and denies having engaged in any wrongdoing alleged by Plaintiff.

3

effort to manipulate the market and yield favorable prices for the trader, the trader's employer, and/or the trader's clients. *Id.* ¶¶ 5, 23–24, 29–30.

In October 2018, John Edmonds, a former JPMorgan precious metals trader, pled guilty to commodities fraud and a spoofing conspiracy in connection with his participation in alleged fraudulent and deceptive trading activity in the precious metals futures contracts market between 2009 and 2015. *See* Exhibit ("Ex.") A (Edmonds Plea Agreement), attached hereto to the Declaration of Sarah E. Bouchard (hereinafter "Bouchard Decl."). As part of his plea, Edmonds admitted that he "and his fellow [precious metals] traders [at the Bank] routinely placed . . . orders . . . for precious metals futures contracts with the intent to cancel those bids and offers before execution (the 'Spoof Orders')," and further admitted that he "learned this deceptive trading strategy from more senior traders at the Bank." *Id.* at 10.

### C.    Turnbull's Interviews with the DOJ.

In connection with the DOJ's investigation of JPMorgan's precious metals desk, Turnbull alleges that the DOJ "invited" him for an interview, and that he participated in three interviews with the DOJ, the first in March 2019 and the last in August 2019. Compl. ¶¶ 6, 41. Turnbull further alleges that he "answer[ed] every question [DOJ] investigators asked." *Id.* ¶ 41. Plaintiff makes no specific allegations regarding the substance of his answers to those questions or statements to the DOJ other than to vaguely assert that he "provided the DOJ with information that revealed significant, multi-year lapses in JPMorgan's trading oversight mechanisms and enforcement judgments." *Id.* ¶¶ 6, 84.

Turnbull alleges that "JPMorgan knew that Mr. Turnbull had met with the DOJ on all three occasions." *Id.* ¶ 42. The Amended Complaint adds allegations that JPMorgan also knew the DOJ was investigating its precious metals desk for potential wire fraud, spoofing, and other manipulative trading practices, and that Turnbull's interviews with the DOJ "were related to these

4

ongoing investigations." *Id.* ¶¶ 43–45. The Amended Complaint further asserts that "JPMorgan knew that the DOJ's interview of Mr. Turnbull included *questions* about JPMorgan's compliance program and the culture and trading practices on its precious metals desk." *Id.* ¶ 46 (emphasis added); *see also* ¶ 88. Again, Plaintiff makes no allegations that he informed JPMorgan of the substance of his DOJ interviews, or of his answers or statements to the DOJ, or that he informed JPMorgan regarding any purported complaint he made to the DOJ.

### D. The DOJ August 2019 Indictment.

On August 20, 2019, Christian Trunz, a JPMorgan precious metals trader, pled guilty to participating in a spoofing conspiracy with other unidentified members of the precious metals desk between 2007 and 2016. *See* Bouchard Decl. Ex. B (Press Release Regarding Trunz Plea). Trunz resigned the same day as his plea. *See* Compl. ¶ 8. Shortly thereafter, in September 2019, the DOJ unsealed an August 22, 2019 criminal indictment against three additional JPMorgan traders —Michael Nowak, Gregg Smith, and Christopher Jordan—alleging that between 2008 and 2016, the defendants and multiple other traders on the JPMorgan precious metals desk engaged in a conspiracy to manipulate the precious metals futures markets by spoofing. *See* Bouchard Decl. Ex. C (August 22, 2019 Indictment); *see also* Compl. ¶ 31.

### E. JPMorgan Interviews Plaintiff as Part of Its Internal Investigation and Terminates His Employment Based on Those Interviews and Its Review of Turnbull's Trades.

Following Trunz's guilty plea and the unsealing of the August 2019 indictment, JPMorgan interviewed Turnbull on three occasions in October 2019. Compl. ¶¶ 53–66. The first interview took place on October 7, 2019, and lasted nearly five hours. *Id.* ¶¶ 53, 56. During the interview, JPMorgan discussed with Plaintiff certain of his trading sequences; Plaintiff asserts that the interview also included a discussion of Turnbull's "knowledge of and opinions about his colleagues and the Bank's control mechanisms." *Id.* ¶ 55.

JPMorgan interviewed Turnbull for a second time on October 24, 2019, to discuss additional trading sequences, which were provided to Turnbull in advance of the interview to review. *Id.* ¶¶ 57–60. Plaintiff asserts that the October 24 interview lasted nearly seven hours and included a review of the trading sequences provided in advance to Turnbull as well as additional trading data. *Id.* ¶¶ 61–63. The third and final interview occurred on October 25, 2019, by phone, and focused, according to Plaintiff, on a "subset of Mr. Turnbull's orders." *Id.* ¶ 64. Following that interview, JPMorgan afforded Turnbull an opportunity to provide a "supplement [to] the existing record," which Turnbull did on October 29, 2019. *Id.* ¶¶ 65–66.

The Amended Complaint's allegations describe thirteen total hours of interviews by JPMorgan of Turnbull over the course of three weeks. Turnbull alleges in precise detail the trading data JPMorgan purportedly focused on and discussed during those interviews. *E.g.*, *id.* ¶¶ 61–64. Conspicuously absent, however, are allegations that at any time during the three interviews Turnbull was either asked about his DOJ interviews (the last of which had occurred two months prior to the internal interviews with JPMorgan) or discussed the fact or substance of his actual statements to the DOJ. *See id.* ¶ 41. For example, although the Amended Complaint asserts that on October 7, 2019, Turnbull told JPMorgan he viewed an electronic chat between two traders during a DOJ interview, the Amended Complaint *does not* include any allegation as to what Turnbull told *the DOJ* regarding that chat, or that Turnbull told JPMorgan what he shared with the DOJ regarding that chat. *Id.* ¶¶ 91–93.[3] Turnbull glosses over these details and alleges vaguely

---

[3] Similarly, the Amended Complaint includes an allegation that Turnbull disclosed information to the DOJ "regarding knowledge of Trader A's trading conduct" and "his interpretation of the electronic chat transcript between Traders D and E," but the Amended Complaint does not plead what "knowledge" or "interpretation" Turnbull imparted to the

6

and generally that "Mr. Turnbull disclosed to the DOJ the sum and substance of what he eventually shared with JPMorgan during his interviews with JPMorgan." *Id.* ¶ 97.

Following the internal interviews, Turnbull was placed on a leave of absence on October 31, 2019, and was terminated shortly thereafter on November 3, 2019. *Id.* ¶¶ 67–69. As Plaintiff admits, JPMorgan informed him that his employment was terminated "because certain of the flagged trading sequences did not meet the Bank's expectations" and because JPMorgan had lost confidence in him. *Id.* ¶¶ 79, 82. The trading sequences in question were identified to Plaintiff following his termination. *Id.* ¶ 79. More specifically, "JPMorgan cited 14 [trading] instances as conduct that 'could be perceived as spoofing.'" *Id.* ¶ 80.

### F.      The DOJ November 2019 Superseding Indictment.

In November 2019, the DOJ filed a superseding indictment in the Northern District of Illinois that, among other things, named an additional former JPMorgan salesperson as a criminal defendant. *See* Bouchard Decl. Ex. D (November 14, 2019 Superseding Indictment); Compl. ¶ 33. The indictment also includes allegations against seven unindicted co-conspirators. Compl. ¶¶ 33–39. Of the four named defendants in the indictment, two were released from employment prior to the indictment (one, ten years prior, and the other, two years prior). *Id.* ¶¶ 131, 136. The employment of the other two defendants ended after the unsealing of the August indictment. *Id.* ¶¶ 134–35.

---

DOJ, or that Turnbull shared with JPMorgan the "knowledge" or "interpretation" that Turnbull told the DOJ. *See id.* ¶¶ 94–95.

REDACTED



REDACTED

REDACTED



REDACTED

; *see also* ¶ 4(c) ("The Company received credit for its cooperation . . . including conducting a thorough internal investigation [and] proactively identifying [to the DOJ] important documents and information **even when those**

9

**documents and information were not favorable to the Company . . . .") (emphasis added).[5]**

The DPA also notes that JPMorgan provided to the DOJ "all relevant facts known to [the Company], including information about the individuals involved in the conduct described in the . . . Statement of Facts and conduct disclosed to [the DOJ] prior to the Agreement." *Id.* ¶ 4(e). R

REDACTED

REDACTED

---

[5] For example, the DPA prominently and favorably discusses JPMorgan's "systematic effort to reassess and enhance [its] market conduct compliance program and internal controls" following a 2015 consent order, including by hiring hundreds of new compliance officers and spending over $335 million on personnel and other compliance costs, improving anti-fraud and manipulation training and policies, revising trade and electronic communications surveillance programs, and implementing tools and processes to facilitate closer supervision of traders. DPA ¶ 4(g).



REDACTED

### III.    PLAINTIFF'S CLAIMS AND THE AMENDED COMPLAINT

Plaintiff now seeks to state a claim for retaliation under SOX based on the fact that he participated in three DOJ interviews, the first of which was seven months prior, and the last of which was two months prior, to his termination. *See* Compl. ¶¶ 41, 68–70, 89, 149. Turnbull purports to state a claim for retaliation without any allegations regarding what statements he actually made to the DOJ; that JPMorgan questioned him regarding his DOJ interviews or considered those interviews when terminating his employment; or that JPMorgan had knowledge of any purported complaints of illegal activity by Turnbull to the DOJ.

Following argument by counsel for the parties on June 16, 2021, wherein counsel for JPMorgan raised these pleading deficiencies, Plaintiff was invited to amend his Complaint and in fact did so. The Amended Complaint, however, does not provide the Court with any specific allegations regarding the content of Turnbull's statements to the DOJ, or any allegation that Turnbull, at any time, provided JPMorgan with knowledge of the substance of Turnbull's statements to the DOJ—subject matters that are squarely within Turnbull's personal knowledge. Rather, Turnbull provided a series of allegations, premised only on his "information and belief," regarding what JPMorgan must have "believed" about Turnbull's DOJ interviews. *See* Compl. ¶¶ 96–105. Plaintiff hopes that these scant allegations, coupled with the mere fact that the DOJ

11

interviewed him, are sufficient to allege that JPMorgan had a retaliatory motive to terminate his employment.  They are not.  REDACTED

## LEGAL STANDARD

The purpose of Rule 12(b)(6) is to "streamline[] litigation by dispensing with needless discovery and fact-finding" and eliminating baseless claims.  *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).  Thus, where "allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal citations omitted).  To avoid dismissal, Plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard requires that plaintiff show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

## ARGUMENT

I.  **PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT HIS PURPORTED PROTECTED ACTIVITY WAS A CONTRIBUTING FACTOR IN HIS TERMINATION, AND THUS FAILS TO STATE A PRIMA FACIE CLAIM UNDER SOX.**

To receive whistleblower protection under SOX, a plaintiff must plead a prima facie case that (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action.  *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 589 (S.D.N.Y. 2019) (Koeltl, J.) (dismissing SOX claim).  If the employee establishes these

elements, the employer may avoid liability if it establishes by clear and convincing evidence that it would have taken the same unfavorable action in the absence of that protected behavior. *Id.* (citing *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Labor*, 710 F.3d 443, 447 (2d Cir. 2013)).

> **A.      Plaintiff Fails to Plead a Causal Connection Between His DOJ Interviews and His Termination.**

Plaintiff fails to meet his threshold burden because he has not sufficiently alleged that his purported protected activity (his DOJ interviews) were a contributing factor in his termination. Even assuming, arguendo, that Plaintiff's DOJ interviews constitute protected activity pursuant to 18 U.S.C. 1514(a)(2), as pled, and accepting as true Plaintiff's allegation that JPMorgan knew of the fact of Plaintiff's DOJ interviews, the Amended Complaint still fails to state a claim because it does not plead any facts or circumstances to suggest that JPMorgan had a retaliatory motive to terminate him for his participation in the same DOJ interviews that JPMorgan helped to facilitate.

Specifically, the Amended Complaint does not point to any alleged statements or actions by JPMorgan indicating that it considered Turnbull's DOJ interviews in reaching its termination decision. The Amended Complaint also does not include any allegations directly stating (i) what specific information Turnbull communicated to the DOJ, let alone that Turnbull complained to the DOJ or actually provided the DOJ with information regarding specific conduct he believed to be illegal; or (ii) that Turnbull communicated the substance of his actual statements to the DOJ to JPMorgan.

Instead, the Amended Complaint is based entirely on sleight of hand: Plaintiff asks for an inference that JPMorgan had knowledge of the substance of his purported statements to the DOJ (and terminated him for those statements), but, in support, offers only allegations regarding Turnbull's responses to JPMorgan's *internal interviews of him. See* Compl. ¶¶ 2, 9, 57. The Court should not allow such unsupported inferences. *See Fraser v. Fiduciary Tr. Co. Int'l*, 417 F. Supp.

2d 310, 322 (S.D.N.Y. 2006) (dismissing SOX claim "barren of any allegations of conduct that would alert Defendants that [Plaintiff] believed the company was violating any federal rule or law related to fraud on shareholders"); *Tonra*, 405 F. Supp. 3d at 589–91 (2019) (Koeltl, J.) (granting motion to dismiss SOX claim where plaintiff failed to plead adequately that he complained of a violation of a relevant securities law); *see also Cellucci v. O'Leary*, No. 19-cv-2752, 2020 WL 977986, at *10–11 (S.D.N.Y. Feb. 28, 2020) (dismissing whistleblower retaliation claim under the Dodd-Frank Act for failure to "plausibly plead any facts from which the Court can infer that Defendants knew about the SEC complaint" and declining to award Plaintiffs the "infer[ence] that [the] report to the SEC encompassed every allegedly improper communication or omission cited in the amended complaint").

**B.     Allegations Upon "Information and Belief" Are Insufficient to Meet Plaintiff's Burden to Show His DOJ Interviews Contributed to His Termination.**

Turnbull's recent amendments to his Complaint merely confirm the deficiency of his claim. Plaintiff was provided the opportunity to put forth allegations demonstrating the substance of his statements to the DOJ and how those statements contributed to his termination, yet he provided only a string of allegations premised on his "information and belief," speculating regarding what JPMorgan must have "believed" about Turnbull's DOJ interviews.  *See* Compl. ¶¶ 96–105. Allegations regarding causation must be based on more than conclusory allegations unsupported by facts, however.  "[U]nwarranted deductions of fact," presented as true are insufficient, and the plaintiff "must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action."  *Brown v. Colonial Sav. F.A.*, No. 16-cv-0884, 2017 WL 354246, at *3 (N.D. Tex. Jan. 23, 2017); *see also Egan v. TradingScreen, Inc.*, No. 10-cv-8202, 2011 WL 4344067, at *3 (S.D.N.Y. Sept. 12, 2011) (dismissing whistleblower claim under the Dodd-Frank Act because plaintiff's amended complaint "failed to allege that an individual or entity actually reported

14

[defendant's] conduct to the SEC. . . . [f]ar from remedying the inadequacies of the [complaint], this pleading recapitulates them, by alleging transmission to the SEC 'on information and belief' without facts that establish a basis for this belief"); *Rimini v. JP Morgan Sec. LLC*, No. 18-cv-1031, 2018 WL 11229124, at *2 (1st Cir. Nov. 7, 2018) (affirming the dismissal of a SOX whistleblower claim because "[Plaintiff's] conclusory allegation that he engaged in SOX-related whistleblowing, unsupported by any facts describing what he did, is inadequate under any pleading standard to establish that he engaged in protected activity") (internal quotation omitted). Plaintiff's "information and belief" allegations must therefore be disregarded and afforded no weight.[6]

All that remains are Turnbull's allegations that JPMorgan was "concerned" he had shared damaging information with the DOJ. Compl. ¶ 2. But this falls well short of what Plaintiff must allege for his claim to survive dismissal. The Amended Complaint does not include any allegations that JPMorgan knew Turnbull was, in fact, a "whistleblower" protected by SOX, and so fails to plausibly allege that JPMorgan had any retaliatory motive to terminate Turnbull and that Turnbull's DOJ interviews were a contributing factor in his termination. As a result, Plaintiff has

---

[6] At oral argument on June 16, 2021, counsel for Plaintiff contended that Plaintiff need not plead that he complained about a violation of a relevant securities law because he brings his SOX claim under 18 U.S.C. § 1514A(a)(2) rather than § 1514A(a)(1). Under (a)(2), Turnbull argues, the mere fact of his participation in DOJ interviews is sufficient to establish protected activity. This misses the point. Even assuming that his mere participation in an interview with the DOJ is protected activity, Plaintiff still must establish causation between that activity and the termination decision. Turnbull fails to do so, and his own argument lays bare the deficiency of his case. It is also apparent that he did not plead under (a)(1) because he could not truthfully allege that he in fact complained about a violation of relevant laws or put forth a single communication that would evidence his reasonable belief of a violation of relevant securities laws. Moreover, if Turnbull believed he had been terminated because he participated in interviews with the DOJ, he could certainly have a raised a contemporaneous internal complaint in that regard. He did not.

15

failed to plausibly allege the final element of his prima facie claim, and his Amended Complaint should not be permitted to advance.

## II. PLAINTIFF'S CLAIM THAT HE WAS TERMINATED FOR PARTICIPATION IN A DOJ INVESTIGATION THAT JPMORGAN ITSELF COOPERATED WITH IS FACIALLY IMPLAUSIBLE.

REDACTED

REDACTED

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. REDACTED

REDACTED

When deciding a motion to dismiss, a "district court [] need not credit conclusory allegations nor suspend common sense when analyzing the complaint." *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2009) (internal citations omitted) (affirming dismissal of complaint where it was "highly implausible that, after having three billion euros stolen by [defendant], [plaintiff] then arranged for another five billion euros to be transferred to the same bank, only to have the funds again stolen by it"); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir.

16

2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless – that is, if they are "fanciful," "fantastic," or "delusional.") (citations committed); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (quotation and citations omitted).



REDACTED

His allegations to the contrary are insufficient to state a claim. *Ashcroft*, 556 U.S. at 678 ("[T]he pleading standard . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.").[7]

**B.    Turnbull's Allegations That JPMorgan's Termination Reason Was Pretextual Are Also Wrong and Implausible.**

JPMorgan terminated Turnbull's employment in October 2019 and informed him that certain of the "flagged trading sequences did not meet the Bank's expectations," resulting in a loss of confidence.  Compl. ¶¶ 79–80, 82.  In particular, "JPMorgan cited 14 [trading] instances as conduct that 'could be perceived as spoofing.'"  Compl. ¶ 80; *see also* Compl. ¶ 50 (referencing

REDACTED

17

JPMorgan's rationale for termination as Turnbull's "trading misconduct"). Turnbull further asserts, however, that after his October 7, 2019 internal interview, JPMorgan then "*hurried* through a faux inquiry into Mr. Turnbull's unimpeachable trading practices." Compl. ¶¶ 9 (emphasis added); 57. That "faux inquiry" focused on trades that Turnbull repeatedly alleges were "flagged" by JPMorgan during and after Turnbull's internal interviews in the Bank's purported rush to retaliate against Turnbull for his participation in DOJ interviews months earlier. Compl. ¶¶ 55, 58, 60, 79, 113–114, 116, 118. This is incorrect.

Plaintiff's allegations are also implausible. REDACTED



---

[8] In deciding a motion to dismiss, a court may consider extrinsic documents not attached to the complaint if they are incorporated into the complaint by reference or integral to the complaint. *E.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). REDACTED

*See Tonra*, 405 F. Supp. 3d at 587–88, 590 (dismissing SOX claim because extrinsic emails attached to defendants' motion to dismiss showing plaintiff's knowledge that disclosure of drug study findings was not necessary "undermine[d]" plaintiff's allegation of reasonable belief that defendants violated securities law for failure to disclose study's results); *Houlahan v. Raptor Trading Sys., Inc.*, No. 16-cv-9620, 2018 WL 3231662, at *4 (S.D.N.Y. Feb. 12, 2018) (dismissing plaintiff's claims upon consideration of a letter not attached to the complaint

REDACTED



## III. ALLOWING PLAINTIFF TO AMEND THE COMPLAINT AGAIN WOULD BE FUTILE.

Turnbull has already amended his Complaint once; that amendment did not cure the initial Complaint's pleading deficiencies. To the contrary, it confirmed that Turnbull cannot sufficiently plead a claim for SOX retaliation. Plaintiff's best efforts to bolster his allegations regarding the substance of his statements to the DOJ and causation fall well short; he still fails to plausibly plead that his DOJ interviews were a contributing factor in his termination. *See supra* 12-16. "Where it appears that granting leave to amend would be futile or is unlikely to be productive, it is not an abuse of discretion to deny leave to amend." *Charter Commc'ns., Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 338 F. Supp. 3d 242, 255 (S.D.N.Y. 2018) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (quotation and citation omitted); *Douramanis v. Dur-Am. Brokerage Inc.*,

---

because plaintiff was aware of the letter, the letter addressed a corporate acquisition at the heart of plaintiff's claims, and the letter "provide[d] part of the factual premise for Plaintiff's good faith and fair dealing claim," such that the letter was integral to the complaint).

19

No. 20-cv-5825, 2021 WL 961761, at *2 (S.D.N.Y. Mar. 15, 2021) ("A proposed amended pleading is futile when it fails to state a claim.") (quotation and citation omitted).



REDACTED *See, e.g.*, *Charter Commc'ns., Inc.*, 338 F. Supp. 3d at 248 n.3 (considering documents that may be judicially noticed under Rule 12(b)(6) in determining the question of futility).[9]

REDACTED

As a result, his claim is not viable and amendment of the Complaint again would be futile.

---

[9] *See also Bechtel*, 710 F.3d at 451 (employer can rebut prima facie case with clear and convincing evidence that it would have taken the same adverse action in the absence of protected behavior). REDACTED *See, e.g.*, *Guitron v. Wells Fargo Bank, NA*, 619 F. App'x 590, 591 (9th Cir. 2015) (failure to meet quarterly sales goals; insubordination to manager; refusal to return to work); *Kim v. Boeing Co.*, 487 F. App'x 356, 357 (9th Cir. 2012) (insubordination); *Hemphill v. Celanese Corp.*, 430 F. App'x 341, 345 (5th Cir. 2011) (single incident of yelling at secretary); *Wallace v. Tesoro Corp.*, No. 11-CA-00099, 2017 WL 6403117, at *7 (W.D. Tex. Fed. 23, 2017) (disrespect for subordinates, peers, and management; refusal to work with others; micromanaging behavior; display of favoritism); *Wallender v. Canadian Nat'l Ry. Co.*, No. 13-cv-2603, 2015 WL 10818741, at *25–27 (W.D. Tenn. Feb. 10, 2015) (insubordination and misreporting of data).

20

## CONCLUSION

For the foregoing reasons, JPMorgan respectfully requests that the Court grant its motion to dismiss the Amended Complaint's claims with prejudice and deny any request by Plaintiff to amend his Complaint again.

Dated:  New York, New York
        July 16, 2021

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ Sarah E. Bouchard
    Sarah E. Bouchard (*pro hac vice*)
    MORGAN, LEWIS & BOCKIUS LLP
    1701 Market Street
    Philadelphia, Pennsylvania 19103
    Tel:  (215) 963-5000
    Fax:  (215) 963-5001

    Gina F. McGuire
    101 Park Avenue
    New York, New York 10178
    Tel:  (212) 309-6000
    Fax:  (212) 309-6001

    *Attorneys for Defendant*
    *JPMorgan Chase & Co.*

## CERTIFICATE OF SERVICE AND COMPLIANCE

I HEREBY CERTIFY that on this 16th day of July, 2021, a copy of the Notice of Defendant JPMorgan & Chase Co.'s Motion to Dismiss the Complaint, accompanying Memorandum of Law in Support of Defendant's Motion, and Declaration of Sarah E. Bouchard were electronically filed through the Court's ECF filing system and served via ECF upon all parties and counsel of record.

I also certify that this brief contains 6,718 words (excluding those in the cover page, certification of compliance, Table of Contents, and Table of Authorities) and that it complies with all applicable formatting rules.

*/s/ Sarah E. Bouchard*
Sarah E. Bouchard