# EXHIBIT A

**UNITED STATES OF AMERICA**
**Before the**
**COMMODITY FUTURES TRADING COMMISSION**

|  |  |
|---|---|
| In the Matter of: ) | |
| ) | |
| JPMorgan Chase Bank, N.A., ) | |
| J.P. Morgan Securities LLC, and ) | CFTC Docket No. 22-07 |
| J.P. Morgan Securities plc, ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ) | |

**RECEIVED CFTC**

Office of Proceedings
Proceedings Clerk
*7:16 am, Dec 17, 2021*

**ORDER INSTITUTING PROCEEDINGS PURSUANT TO**
**SECTION 6(c) AND (d) OF THE COMMODITY EXCHANGE ACT, MAKING**
**FINDINGS, AND IMPOSING REMEDIAL SANCTIONS**

## I.      INTRODUCTION

The Commodity Futures Trading Commission ("Commission") has reason to believe that from at least July 2015 to the present ("Relevant Period"), JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc (collectively, "JPMorgan" or "Respondents") violated, as set forth below, Sections 4g, 4s(f)(1)(C), 4s(g)(1) and (3), and 4s(h)(1)(B) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6g, 6s(f)(1)(C), 6s(g)(1), (3), 6s(h)(1)(B), and Commission Regulations ("Regulations") 1.31, 1.35, 23.201, 23.202(a)(1), (b)(1), 23.602, and 166.3, 17 C.F.R. §§ 1.31, 1.35, 23.201, 23.202(a)(1), (b)(1), 23.602 (2020), 17 C.F.R. § 166.3 (2021).  Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether Respondents engaged in the violations set forth herein and to determine whether any order should be issued imposing remedial sanctions.

In anticipation of the institution of an administrative proceeding, Respondents have submitted an Offer of Settlement ("Offer"), which the Commission has determined to accept. Respondents admit the facts set forth in Section II below, acknowledge that their conduct violated the Act and Regulations and consent to the entry of this Order Instituting Proceedings Pursuant to Section 6(c) and (d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions ("Order"), and acknowledge service of this Order.[1]

---

[1] Respondents consent to the use of the findings of fact and conclusions of law in this Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof.

## II.    FINDINGS

The Commission  finds the following:

## A.    **<u>SUMMARY</u>**

The Act and Regulations  impose recordkeeping and supervision  requirements on Commission  registrants to ensure that they responsibly  discharge their crucial role in our markets.  Compliance  with these requirements  is essential to the Commission's  efforts to promote the integrity,  resilience, and vibrancy of the U.S. derivatives  markets through  sound regulation.

During the course of a Commission  investigation  into certain of JPMorgan's trading, Commission  staff issued subpoenas to JPMorgan for certain communications.   The Division learned, based on communications  received from a third party, that JPMorgan traders had been using personal text messages and WhatsApp to communicate.  Moreover, certain of those communications  were responsive to the Commission's  subpoenas. JPMorgan did not collect, or maintain,  its employees' messages over unapproved channels on personal devices. Consequently, JPMorgan did not produce those responsive communications  to the Commission.

In or about April 2021, Commission  staff brought the use of unapproved communication methods  by certain of JPMorgan's traders to JPMorgan's attention.   Thereafter, JPMorgan notified Commission  staff that the firm was aware of widespread and longstanding  use by JPMorgan employees  of unapproved methods  to engage in business-related communications.

The Commission's  subsequent investigation  with respect to JPMorgan employee use of unapproved methods of communication  revealed that, during the Relevant Period, JPMorgan employees,  including  those at senior levels, communicated both internally  and externally  on unapproved channels, including  via personal text messages and WhatsApp messages. These written communications  were sent and received by JPMorgan employees and included  messages related to JPMorgan's businesses as Commission  registrants that were required to be maintained under Commission-mandated  recordkeeping requirements.  None of these written communications  were maintained and preserved by JPMorgan, and they were not able to be furnished  promptly  to a Commission  representative when requested.  As a result, JPMorgan violated,  as set forth below, Sections 4g, 4s(f)(1)(C) and 4s(g)(1) and (3) of the Act and Regulations  1.31, 1.35, 23.201, and 23.202(a)(1) and (b)(1).

In addition,  the widespread use of unauthorized communication  methods  by JPMorgan's employees  to conduct firm business violated JPMorgan's own policies and procedures, which prohibited such communications.   JPMorgan did not maintain  adequate internal controls with respect to business-related communications  on non-approved communication methods.  Indeed,

---

Respondents do not consent, however, to the use of this Order, or the findings or conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party or claimant, other than:  a proceeding in bankruptcy or receivership;  or a proceeding to enforce the terms of this Order.  Respondents do not consent to the use of the Offer or this Order, or the findings or conclusions in this Order, by any other party in any other proceeding.

some of the very same supervisory personnel at JPMorgan responsible for ensuring compliance with JPMorgan's policies and procedures themselves utilized non-approved methods of communication to engage in business-related communications, in violation of firm policy. Because JPMorgan failed to implement a diligent supervisory system to ensure compliance with Commission recordkeeping requirements and the firm's own policies and procedures, and because the widespread use of unauthorized communication methods resulted in the firm's failure to maintain Commission-required records, JPMorgan failed to diligently supervise matters related to its business as a Commission registrant in violation of Section 4s(h)(1)(B) of the Act and Regulations 166.3 and 23.602, as set forth below.

## B.   RESPONDENTS

**JPMorgan Chase Bank, N.A.** is a national banking association with its main office in New York City. JPMorgan Chase Bank, N.A. is provisionally registered with the Commission as a swap dealer and provides consumer finance, investment banking, commercial banking, and other services.

**J.P. Morgan Securities LLC** is a limited liability company with its principal place of business in New York City. J.P. Morgan Securities LLC is registered with the Commission as a Futures Commission Merchant ("FCM") and is provisionally registered with the Commission as a swap dealer.

**J.P. Morgan Securities plc** is a company with its principal place of business in London, England. J.P. Morgan Securities plc is provisionally registered with the Commission as a swap dealer.

## C.   FACTS

During the course of a Commission investigation into certain of JPMorgan's trading, Commission staff issued subpoenas to JPMorgan for specified communications. Separately, Commission staff obtained communications from a third party that reflected numerous text and WhatsApp messages to or from JPMorgan employees that occurred over unapproved channels on those employees' personal devices. Although certain of the communications between the JPMorgan employees and the third party were responsive to the Commission's subpoenas, JPMorgan did not collect those messages or produce them to the Commission because the messages were sent or received through non-JPMorgan-approved communication methods on those employees' personal devices. Commission staff only learned of the communications from a third party. Commission staff were additionally aware, based on the information obtained from the third party, that some JPMorgan employees no longer possessed communications that had been sent or received by non-approved methods.

Upon learning of these communications, Commission staff notified JPMorgan that the Commission was aware that certain of JPMorgan's traders had communicated via unapproved communication methods, including personal text and WhatsApp messages, that were apparently not surveilled and maintained by JPMorgan. In response to Commission staff's questions regarding JPMorgan employees' use of unapproved channels on those employees' personal devices, JPMorgan notified Commission staff that the firm was aware of the widespread and

3

longstanding use by JPMorgan employees—including senior-level employees—of unapproved methods to engage in business-related communications.

Importantly, during the Relevant Period, JPMorgan policies and procedures broadly prohibited employees from using non-approved methods, such as personal text messages and WhatsApp, to engage in business-related communications. And certain JPMorgan policies explicitly stated that the policies are to be applied consistently with applicable Commission rules or regulations, specifically referencing 1.31 and 23.202(a)(1).

Messages sent through JPMorgan-approved communications methods were monitored, subject to review, and when appropriate, archived. By contrast, messages sent using unapproved communication methods, including over WhatsApp, email, and text messages on personal devices, were not monitored, subject to review, or archived.

As a result of JPMorgan's failure to ensure that employees—including supervisors and senior-level employees—complied with the firm's communications policies and procedures, JPMorgan failed to maintain thousands of business-related communications in connection with its commodities and swaps businesses, and thus failed diligently to supervise its businesses as Commission registrants. These supervision failures resulted in the widespread use of non-approved methods of communication by many JPMorgan employees in violation of the firm's policies and procedures, as well as a widespread failure to maintain certain records required to be maintained pursuant to Commission recordkeeping requirements.

An analysis, for example, of the three traders whose communications that were the subject of Commission subpoenas in the investigation noted above illustrates the breadth of JPMorgan's supervision and recordkeeping failures. An analysis of just those three custodians reveals the frequent use of non-approved methods to communicate with brokers and market participants. Further, those three traders' communications revealed that dozens more JPMorgan employees (including numerous supervisors, managing directors, and executive directors) conducted firm business on unapproved channels (including in hundreds of text and WhatsApp messages). Certain of these communications constituted records that were required to be kept pursuant to Commission recordkeeping requirements, and none of the communications were preserved and maintained by JPMorgan.

JPMorgan's recordkeeping and supervision failures were firm-wide and involved employees at all levels of authority. Moreover, employees' use of unapproved communication methods was not hidden within the firm. To the contrary, certain supervisors—the very people responsible for supervising employees to prevent this misconduct—routinely communicated using unapproved channels on their personal devices. In fact, managing directors and senior supervisors responsible for implementing JPMorgan's policies and procedures, and for overseeing employees' compliance with those policies and procedures, themselves failed to comply with firm policies by communicating using non-firm approved methods on their personal devices about the firm's Commission-regulated businesses.

## III.    LEGAL DISCUSSION

**A.    JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc's Failure to Maintain Required Records in Violation of Section 4s(f)(1)(C) and 4s(g)(1) and (3) of the Act and Regulations 23.201(a)(1), 23.202(a)(1), and 23.202(b)(1)**

Section 4s(f)(1)(C) of the Act obligates swap dealers to keep "books and records of all activities related to its business as a swap dealer . . . in such form and manner and for such period as may be prescribed by the Commission by rule or regulation" and those books and records must be kept "open to inspection and examination by any representative of the Commission." 7 U.S.C. § 6s(f)(1)(C); *see also* Section 4s(g)(1) and (3) of the Act, 7 U.S.C. § 6s(g)(1), (3) (requiring swap dealers to keep daily trading and counterparty records). These statutes are implemented, among other places, at Regulations 23.201(a)(1), 23.202(a)(1), and 23.202(b)(1), 17 C.F.R. § 23.201(a)(1), 23.202(a)(1), 23.202(b)(1) (2020).

Regulation 23.201(a) obligates a swap dealer to "keep full, complete, and systematic records, together with all pertinent data and memoranda, of all its swaps activities," including "[r]ecords of each transaction, including all documents on which transaction information is originally recorded." Regulation 23.202(a)(1) and (b)(1), 17 C.F.R. § 23.202(a)(1), (b)(1) (2020), requires, in relevant part, every swap dealer to keep daily trading records of all swaps and related cash and forward transactions it executes including, specifically, a record of oral and written communications provided or received concerning quotes, solicitations, bids, offers, instructions, trading, and prices that led to the execution of a swap transaction or the conclusion of a related cash or forward transaction.

During the Relevant Period, as a result of the widespread employee use of unapproved communication methods, JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc failed to maintain Commission-required transaction records and pre-execution communications. By this conduct, JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc violated Sections 4s(f)(1)(C) and 4s(g)(1) and (3) of the Act and Regulations 23.201(a)(1), 23.202(a)(1), and 23.202(b)(1).

**B.    J.P. Morgan Securities LLC's Failure to Keep Required Records in Violation of Section 4g of the Act and Regulation 1.35**

Section 4g of the Act requires FCMs and other registrants to create and keep books and records pertaining to transactions and positions in such form and manner and for such period as may be required by the Commission. 7 U.S.C. § 6g. Regulation 1.35(a)(1), 17 C.F.R. § 1.35(a)(1) (2020), sets forth some of the books and records that are required to be created and maintained by FCMs. Specifically, an FCM must:

> (i) Keep full, complete, and systematic records . . . of all transactions relating to its business of dealing in commodity interests . . . which shall include all orders (filled, unfilled, or canceled), . . . and all other records, which have been prepared in the course of its business of dealing in commodity interests . . . .

\*\*\*

(iii) Keep all oral and written communications provided or received concerning quotes, solicitations, bids, offers, instructions, trading, and prices that lead to the execution of a transaction in a commodity interest . . . whether transmitted by telephone, voicemail, facsimile, instant messaging, chat rooms, electronic mail, mobile device, or other digital or electronic media . . . .

With the exception of pre-trade communications, all such records are required to be "kept in a form and manner that allows for the identification of a particular transaction." Regulation 1.35(a)(5), 17 C.F.R. § 1.35(a)(5) (2020).

As a result of the widespread use of unapproved methods of communication by firm employees, which communications were not preserved and maintained, J.P. Morgan Securities LLC failed to keep full, complete, and systematic records of all transactions relating to its business of dealing in commodity interests, in violation of Section 4g of the Act and Regulation 1.35.

**C.    JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc's Failure to Keep Records in Required Manner in Violation of Regulation 1.31**

Regulation 1.31(b)(4), 17 C.F.R. § 1.31(b)(4) (2020), requires that registrants keep all books and records that are required to be maintained under the Act and Regulations in such manner as to make them "readily accessible" for a period of two years for paper records and for the duration of the retention period for electronic records. Upon request of the Commission, all of these documents are required to be "promptly" produced. Regulation 1.31(d), 17 C.F.R. § 1.31(d) (2020). Regulation 23.203(b)(1), 17 C.F.R. § 23.203(b)(1) (2020), requires that records required to be kept pursuant to Part 23 of the Regulations, be kept in accordance with Regulation 1.31, 17 C.F.R. § 1.31 (2020).

By failing to keep all Commission-required records in such a manner as to make them "readily accessible," JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc violated Regulation 1.31. In addition, J.P. Morgan Chase Bank, N.A. violated Regulation 1.31 by not promptly producing such communications upon request in connection with the Commission's investigation, as described above.

**D.    JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc's Failure to Supervise Diligently in Violation of Section 4s(h)(1)(B) of the Act and Regulation 23.602(a)**

Section 4s(h)(1)(B) of the Act, 7 U.S.C. § 6s(h)(1)(B), requires "diligent supervision of the business of the registered swap dealer[.]" Regulation 23.602 requires that each swap dealer "shall establish and maintain a system to supervise, and shall diligently supervise, all activities relating to its business performed by its partners, members, officers, employees, and agents (or persons occupying a similar status or performing a similar function)." 17 C.F.R. § 23.602(a) (2020). The operative language of Regulation 23.602 is similar to the language of the

6

Commission's longstanding supervision regulation for futures and options, Regulation 166.3, 17 C.F.R. § 166.3 (2021).

Under Regulation 23.602, a violation is demonstrated by showing either that: (1) the registrant's supervisory system was generally inadequate; or (2) the registrant failed to perform its supervisory duties diligently. *See In re Commerzbank AG*, CFTC No. 19-03, 2018 WL 5921385, at *10-11 (Nov. 8, 2018) (consent order) (noting textual similarities between Regulation 23.602 and Regulation 166.3, applying case law concerning Regulation 166.3, and citing *In re Murlas Commodities, Inc.*, CFTC No. 85-29, 1995 WL 523563, at *9 (Sept. 1, 1995), and *In re Paragon Futures Assoc.*, CFTC No. 88-18, 1992 WL 74261, at *14 (Apr. 1, 1992)); *In re INTL FCStone Markets, LLC*, CFTC No. 15-27, 2015 WL 4980321, at *3 (Aug. 19, 2015) (consent order) (same). Evidence of violations that "'should be detected by a diligent system of supervision, either because of the nature of the violations or because the violations have occurred repeatedly,' is probative of a failure to supervise." *In re Société Générale Int'l Ltd.*, CFTC No. 19-38, 2009 WL 4915485, at *7 (Sept. 30, 2019) (consent order) (quoting *In re INTL FCStone Markets*, 2015 WL 4980321, at *3).

JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc failed to supervise their swap dealer business activities diligently during the Relevant Period. JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc failed to maintain an adequate supervisory system to ensure that employees did not utilize non-approved methods to engage in communications relating to firm business, including the swap dealer business. JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc's failure to supervise is demonstrated by their failure to detect, prevent, and remediate repeated violations of the Commission's recordkeeping requirements and firm policies and procedures. Supervisory personnel failed to ensure that employees complied with the Commission's recordkeeping requirements and firm communications policies and in some instances themselves violated the policies. These supervision failures also resulted in the failure to keep and maintain Commission-required records, the failure to maintain the records in such a manner as to make them readily available, and the failure to produce the records promptly upon request. By this conduct, JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc failed to supervise diligently their officers, employees, and agents, in violation of Section 4s(h)(1)(B) of the Act and Regulation 23.602(a).

### E.   J.P. Morgan Securities LLC's Failure to Diligently Supervise in Violation of Regulation 166.3

Regulation 166.3 states:

> Each Commission registrant, except an associated person who has no supervisory duties, must diligently supervise the handling by its partners, officers, employees and agents (or persons occupying a similar status or performing a similar function) of all commodity interest accounts carried, operated, advised or introduced by the registrant and all other activities of its partners, officers, employees and agents (or persons occupying a similar status or performing a similar function) relating to its business as a Commission registrant.

17 C.F.R. § 166.3 (2021).

A violation under Regulation 166.3 is an independent violation for which no underlying violation is necessary. *See In re Collins*, CFTC No. 94-13, 1997 WL 761927, at *10 (Dec. 10, 1997). A violation of Regulation 166.3 is demonstrated by showing either that: (1) the registrant's supervisory system was generally inadequate; or (2) the registrant failed to perform its supervisory duties diligently. *In re Murlas Commodities, Inc.*, CFTC No. 85-29, 1995 WL 523563, at *9 (Sept. 1, 1995); *Sansom Refining Co. v. Drexel Burnham Lambert, Inc.*, CFTC No. 82-R448, 1990 WL 282783, at *11 (Feb. 16, 1990) (noting that, under Regulation 166.3, registrants have "duty to develop procedures for the detection and deterrence of possible wrongdoing by [their] agents" (internal quotation omitted)); *In re GNP Commodities, Inc.*, CFTC No. 89-1, 1992 WL 201158, at *17-19 (Aug. 11, 1992) (providing that, even if an adequate supervisory system is in place, Regulation 166.3 can still be violated if the supervisory system is not diligently administered); *see also In re Rosenthall Collins Grp.*, LLC, CFTC No. 12-18, 2012 WL 1242406, at *6 (Apr. 12, 2012) (consent order) (respondent failed to perform supervisory duties diligently by not following its compliance procedures that were in place). Evidence of violations that "should be detected by a diligent system of supervision, either because of the nature of the violations or because the violations have occurred repeatedly" is probative of a failure to diligently supervise. *In re Paragon Futures Assoc.*, CFTC No. 88-18, 1992 WL 74261, at *14 (Apr. 1, 1992) ("The focus of any proceeding to determine whether Rule 166.3 has been violated will be on whether [a] review [has] occurred and, if it did, whether it was 'diligent.'").

J.P. Morgan Securities LLC failed to supervise its business as a Commission registrant by failing to maintain adequate supervisory systems to ensure that employees complied with Commission recordkeeping requirements and firm policies and procedures that prohibited business-related communications on non-approved methods of communication. The inadequacy of J.P. Morgan Securities LLC's supervisory systems is demonstrated by the longstanding and repeated violations of the Commission's recordkeeping regulations and firm policies and procedures, including by supervisory personnel, and the fact that the supervisory failures resulted in the repeated failure to maintain Commission-required records, to ensure that the required records were readily accessible, and that the records could be promptly produced upon request. By this conduct, J.P. Morgan Securities LLC failed to supervise diligently its officers, employees, and agents in violation of Regulation 166.3.

## IV.    FINDINGS OF VIOLATIONS

Based on the foregoing, the Commission finds that, during the Relevant Period, JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc violated Sections 4s(f)(1)(C), 4s(g)(1) and (3), and 4s(h)(1)(B) of the Act, 7 U.S.C. §§ 6s(f)(1)(C), 6s(g)(1), (3), 6s(h)(1)(B), and Regulations 1.31, 23.201, 23.202(a)(1) and (b)(1), and 23.602, 17 C.F.R. §§ 1.31, 23.201, 23.202(a)(1), (b)(1), and 23.602 (2020); and J.P. Morgan

8

Securities LLC violated Section 4g of the Act, 7 U.S.C. § 6g, and Regulations 1.35 and 166.3, 17 C.F.R. § 1.35 (2020), 17 C.F.R. § 166.3 (2021).

## V.   OFFER OF SETTLEMENT

Respondents have submitted the Offer in which they:

A.   Acknowledge service of this Order;

B.   Admit the facts described in Section II above and acknowledge that their conduct violated the Act and Regulations;

C.   Admit the jurisdiction of the Commission with respect to all matters set forth in this Order and for any action or proceeding brought or authorized by the Commission based on violation of or enforcement of this Order;

D.   Waive:

   1.   The filing and service of a complaint and notice of hearing;

   2.   A hearing;

   3.   All post-hearing procedures;

   4.   Judicial review by any court;

   5.   Any and all objections to the participation by any member of the Commission's staff in the Commission's consideration of the Offer;

   6.   Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504, and 28 U.S.C. § 2412, and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2021), relating to, or arising from, this proceeding;

   7.   Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this proceeding; and

   8.   Any claims of Double Jeopardy based on the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief, including this Order;

E.   Stipulate that the record basis on which this Order is entered shall consist solely of the findings contained in this Order to which Respondents have consented in the Offer; and

F.    Consent, solely on the basis of the Offer, to the Commission's entry of this Order that:

    1.    Makes findings by the Commission that JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc violated Sections 4s(f)(1)(C), 4s(g)(1) and (3), and 4s(h)(1)(B) of the Act, 7 U.S.C. §§ 6s(f)(1)(C), 6s(g)(1), (3), 6s(h)(1)(B), and Regulations 1.31, 23.201, 23.202(a)(1) and (b)(1), and 23.602, 17 C.F.R. §§ 1.31, 23.201, 23.202(a)(1), (b)(1), and 23.602 (2020); and J.P. Morgan Securities LLC violated Section 4g of the Act, 7 U.S.C. § 6g, and Regulations 1.35 and 166.3, 17 C.F.R. § 1.35 (2020), 17 C.F.R. § 166.3 (2021).

    2.    Orders JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc to cease and desist from violating Sections 4s(f)(1)(C), 4s(g)(1) and (3), and 4s(h)(1)(B) of the Act, and Regulations 1.31, 23.201, 23.202(a)(1) and (b)(1), and 23.602; and J.P. Morgan Securities LLC to cease and desist from violating Section 4g of the Act and Regulations 1.35 and 166.3.

    3.    Orders Respondents to pay, jointly and severally, a civil monetary penalty in the amount of seventy-five million US dollars ($75,000,000), plus post-judgment interest within fourteen days of the date of entry of this Order;

    4.    Orders Respondents and their successors and assigns to comply with the conditions and undertakings consented to in the Offer and as set forth in Part VI of this Order; and

    5.    Represents that it has engaged in a review of certain recordkeeping failures and begun a program of remediation.

    6.    Upon consideration, the Commission has determined to accept the Offer.

## VI.    ORDER

**Accordingly, IT IS HEREBY ORDERED THAT:**

A.    JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities plc and their successors and assigns shall cease and desist from violating Sections 4s(f)(1)(C), 4s(g)(1) and (3), and 4s(h)(1)(B) of the Act, 7 U.S.C. §§ 6s(f)(1)(C), 6s(g)(1), (3), 6s(h)(1)(B), and Regulations 1.31, 23.201, 23.202(a)(1) and (b)(1), and 23.602, 17 C.F.R. §§ 1.31, 23.201, 23.202(a)(1), (b)(1), and 23.602 (2020); and J.P. Morgan Securities LLC and its successors and assigns shall cease and desist from violating Section 4g of the Act, 7 U.S.C. § 6g, and Regulations 1.35 and 166.3, 17 C.F.R. § 1.35 (2020), 17 C.F.R. § 166.3 (2021).

B.    Respondents shall pay, jointly and severally, a civil monetary penalty in the amount of seventy-five million US dollars ($75,000,000) ("CMP Obligation"), within fourteen days of the date of the entry of this Order. If the CMP Obligation is not paid in full within fourteen days of the date of entry of this Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be

10

determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

Respondents shall pay the CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment is to be made by electronic funds transfer, Respondents shall contact Jamie Stovall or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Respondents shall accompany payment of the CMP Obligation with a cover letter that identifies the paying Respondent and the name and docket number of this proceeding. The paying Respondent shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581;

C.   Respondents and their successors and assigns shall comply with the following conditions and undertakings set forth in the Offer:

1.   <u>JPMorgan</u>.

   a.   JPMorgan shall conduct:

      i.   A comprehensive review of JPMorgan's supervisory, compliance, and other policies and procedures designed to ensure that JPMorgan's electronic communications, including those found on personal electronic devices, including without limitation, cellular phones ("Personal Devices"), are preserved in accordance with the requirements of the Act, the Regulations, and JPMorgan's policies and procedures.

      ii.   A comprehensive review of training conducted by JPMorgan to ensure personnel are complying with the requirements regarding the preservation of electronic communications, including those found on Personal Devices, in accordance with the requirements of the Act and

the Regulations, and JPMorgan's policies and procedures, including by ensuring that JPMorgan personnel certify in writing on a quarterly basis that they are complying with preservation requirements.

iii.   An assessment of the surveillance program measures implemented by JPMorgan to ensure compliance, on an ongoing basis, with the requirements found in the Act, the Regulations, and JPMorgan's policies and procedures to preserve electronic communications, including those found on Personal Devices.

iv.   An assessment of the technological solutions that JPMorgan has begun implementing to meet the record retention requirements of the Act, the Regulations, and JPMorgan's policies and procedures, including an assessment of the likelihood that JPMorgan personnel will use the technological solutions going forward and a review of the measures employed by JPMorgan to track employee usage of new technological solutions.

v.   An assessment of the measures used by JPMorgan to prevent the use of unauthorized communications methods for business communications by employees. This assessment should include, but not be limited to, a review of the firm's policies and procedures to ascertain if they provide for any significant technology and/or behavioral restrictions that help prevent the risk of the use of unapproved communications methods on Personal Devices (e.g., trading floor restrictions).

vi.   A review of JPMorgan's electronic communications surveillance routines to ensure that electronic communications through approved communications methods found on Personal Devices are incorporated into JPMorgan's overall communications surveillance program.

vii.   A comprehensive review of the framework adopted by JPMorgan to address instances of non-compliance by JPMorgan employees with JPMorgan's policies and procedures concerning the use of Personal Devices to communicate about JPMorgan business in the past. This review shall include a survey of how JPMorgan determined which employees failed to comply with JPMorgan policies and procedures, the corrective action carried out, an evaluation of who violated policies and why, what penalties were imposed, and whether penalties were handed out consistently across business lines and seniority levels.

b.   Within forty-five (45) days after completion of the review set forth in sub-paragraphs a.i. through a.vii. above, JPMorgan shall submit a detailed written report of its findings to the Commission staff (the "Report"). The Report shall include a description of the review performed, the names of the individuals

12

who performed the review, the conclusions reached, and a summary of the plan for implementing the recommended changes in or improvements to JPMorgan's policies and procedures.

c. JPMorgan shall adopt all recommendations contained in the Report within one hundred and thirty-five (135) days of the date of the Report.

d. The Report will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of the reports could discourage cooperation, impede pending or potential government investigations or undermine the objectives of the reporting requirement. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except (1) pursuant to court order; (2) as agreed to by the parties in writing; (3) to the extent that the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities; or (4) is otherwise required by law.

2. <u>One-Year Evaluation</u>: JPMorgan shall assess its program for the preservation, as required under the Act, Regulations, and JPMorgan's policies and procedures, of electronic communications, including those found on Personal Devices, commencing one year after submitting the Report required by Paragraph 1.b above. JPMorgan shall require this review to evaluate JPMorgan's progress in the areas described in Paragraph 1.a.i-vii above. After this review, JPMorgan shall submit a report (the "One Year Report") to the Commission staff and shall ensure that the One Year Report includes an updated assessment of JPMorgan's policies and procedures with regard to the preservation of electronic communications (including those found on Personal Devices), training, surveillance programs, and technological solutions implemented in the prior year period.

3. <u>Reporting Discipline Imposed</u>: For two years following the entry of this Order, JPMorgan shall notify the Commission staff as follows upon the imposition of any discipline imposed by JPMorgan, including, but not limited to, written warnings, loss of any pay, bonus, or incentive compensation, or the termination of employment, with respect to any employee found to have violated JPMorgan's policies and procedures concerning the preservation of electronic communications, including those found on Personal Devices: (1) at least 48 hours before the filing of a Form 8-T; or (2) within ten (10) days of the imposition of other discipline.

4. <u>Recordkeeping</u>: JPMorgan shall preserve, for a period of not less than six (6) years from the end of the fiscal year last used, the first two (2) years in an easily accessible place, any record of compliance with these undertakings.

5. <u>Public Statements</u>: Respondents agree that neither they nor any of their successors and assigns, agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any findings or

13

conclusions in this Order or creating, or tending to create, the impression that this Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondents': (1) testimonial obligations; or (2) right to take legal positions in other proceedings to which the Commission is not a party. Respondents and their successors and assigns shall comply with this agreement, and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement.

6. <u>Cooperation, in General</u>: Respondents shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in this action, and in any current or future Commission investigation or action related thereto. Respondents shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action.

7. <u>Partial Satisfaction</u>: Respondents understand and agree that any acceptance by the Commission of any partial payment of Respondents' CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

8. <u>Deadlines</u>: For good cause shown, Division staff may extend any of the procedural dates relating to the undertakings. Unless otherwise specified, deadlines for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered to be the last day.

9. <u>Change of Address/Phone</u>: Until such time as Respondents satisfy in full their CMP Obligation as set forth in this Order, Respondents shall provide written notice to the Commission by certified mail of any change to their telephone numbers and mailing addresses within ten calendar days of the change.

**The provisions of this Order shall be effective as of this date.**

By the Commission.

_____

Christopher J. Kirkpatrick
Secretary of the Commission
Commodity Futures Trading Commission

Dated: December 17, 2021

14