# EXHIBIT B

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 93807/ December 17, 2021**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-20681**

|  |  |
|---|---|
| **In the Matter of**<br><br>        **J.P. Morgan Securities LLC**<br><br>**Respondent.** | **ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTIONS 15(b) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER** |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934 ("Exchange Act") against J.P. Morgan Securities LLC ("Respondent" or "JPMorgan").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement ("Offer") that the Commission has determined to accept. Respondent admits the facts set forth in Section III below, acknowledges that its conduct violated the federal securities laws, admits the Commission's jurisdiction over it and the subject matter of these proceedings, and consents to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds[1] that

---

[1]    The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

## Summary

1.      The federal securities laws impose recordkeeping requirements on broker-dealers to ensure that they responsibly discharge their crucial role in our markets.  The Commission has long said that compliance with these requirements is essential to investor protection and the Commission's efforts to further its mandate of protecting investors, maintaining fair, orderly, and efficient markets, and facilitating capital formation.

2.      These proceedings arise out of the widespread and longstanding failure of JPMorgan employees throughout the firm, including those at senior levels, to adhere to certain of these essential requirements.  These employees communicated both internally and externally via personal text messages, WhatsApp messages, and emails on their personal devices.

3.      These written communications were sent and received by JPMorgan employees and included messages related to the securities business of the broker-dealer operated by JPMorgan.  None of these written communications was maintained and preserved by JPMorgan, and some were not able to be furnished promptly to a Commission representative when requested.  As a result, JPMorgan violated Section 17(a) of the Exchange Act and Rules 17a-4(b)(4) and 17a-4(j) thereunder.

4.      JPMorgan's widespread failure to implement its policies and procedures which forbid such communications led to its failure to reasonably supervise its employees within the meaning of Section 15(b)(4)(E) of the Exchange Act.

5.      From at least January 2018 through at least November 2020, JPMorgan employees often communicated about securities business matters on their personal devices, using text messaging applications (including WhatsApp) and personal email accounts.  None of these records was preserved by the firm.  The failure was firm-wide, and involved employees at all levels of authority.

6.      Moreover, this widespread practice was not hidden within the firm.  To the contrary, supervisors – *i.e.*, the very people responsible for supervising employees to prevent this misconduct – routinely communicated using their personal devices.  In fact, dozens of managing directors across the firm and senior supervisors responsible for implementing JPMorgan's policies and procedures, and for overseeing employees' compliance with those policies and procedures, themselves failed to comply with firm policies by communicating using non-firm approved methods on their personal devices about the firm's securities business.

7.      JPMorgan received and responded to Commission subpoenas for documents and records requests in numerous Commission investigations during the time period that it failed to maintain required securities records relating to the business.  In responding to these subpoenas and requests, JPMorgan frequently did not search for records contained on the personal devices of JPMorgan employees relevant to those inquiries.  JPMorgan's recordkeeping failures impacted the Commission's ability to carry out its regulatory functions and investigate potential violations of the federal securities laws across these investigations; the Commission was often

2

deprived of timely access to evidence and potential sources of information for extended periods of time and, in some instances, permanently.

8.      Commission staff brought the failure to produce text messages in an ongoing matter to JPMorgan's attention, and JPMorgan identified other recordkeeping failures that it subsequently reported to the staff.  JPMorgan now has engaged in a review of certain recordkeeping failures and begun a program of remediation.  As set forth in the Undertakings below, JPMorgan will retain a compliance consultant to review and assess the firm's remedial steps relating to JPMorgan's recordkeeping practices, policies and procedures, related supervisory practices and employment actions.

## Respondent

9.      Respondent is a Delaware limited liability company with its principal office in New York, New York and is registered with the Commission as a broker-dealer and as an investment adviser.  It is a wholly owned subsidiary of JPMorgan Chase & Co., a global financial services firm incorporated in Delaware and headquartered in New York, New York.

## Recordkeeping Requirements under the Exchange Act

10.      Section 17(a)(1) of the Exchange Act authorizes the Commission to issue rules requiring broker-dealers to make and keep for prescribed periods, and furnish copies of, such records as necessary or appropriate in the public interest, for the protection of investors or otherwise in furtherance of the purposes of the Exchange Act.

11.      The Commission adopted Rule 17a-4 pursuant to this authority.  Rule 17a-4 specifies the manner and length of time that the records created in accordance with other Commission rules, and certain other records produced by broker-dealers, must be maintained and produced promptly to Commission representatives.  The rules adopted under Section 17(a)(1) of the Exchange Act, including Rule 17a-4(b)(4), require broker-dealers to create, and preserve in an easily accessible place, originals of all communications received and copies of all communications sent relating to the firm's business as such.  Rule 17a-4(j) requires that any such records required to be preserved must be furnished promptly to a Commission representative upon request.  These rules impose minimum recordkeeping requirements that are based on standards a prudent broker-dealer should follow in the normal course of business.

12.      The Commission previously has stated that these and other recordkeeping requirements "are an integral part of the investor protection function of the Commission, and other securities regulators, in that the preserved records are the primary means of monitoring compliance with applicable securities laws, including antifraud provisions and financial responsibility standards."  Commission Guidance to Broker-Dealers on the Use of Electronic Storage Media under the Electronic Signatures in Global and National Commerce Act of 2000 with Respect to Rule 17a-4(f), 17 C.F.R. Part 241, Exchange Act Rel. No. 44238 (May 1, 2001).

### JPMorgan's Policies and Procedures

13.    JPMorgan maintained certain policies and procedures designed to ensure the retention of business-related records, including electronic communications, in compliance with the relevant recordkeeping provisions.

14.    JPMorgan employees were advised that the use of unapproved electronic communications methods, including on their personal devices, was not permitted, and they should not use personal email, chats or text applications for business purposes, or forward work-related communications to their personal devices.

15.    WhatsApp was identified by name as a prohibited communications method for business-related communications.

16.    Messages sent through JPMorgan-approved communications methods were monitored, subject to review, and, when appropriate, archived.  Messages sent through unapproved communications methods, such as WhatsApp and those sent from unapproved applications on personal devices, were not monitored, subject to review or archived.

17.    Supervisory policies tasked supervisors with ensuring that employees completed training in the firm's communications policies and adhered to JPMorgan's books and recordkeeping requirements.  Supervisory policies noted that screening and review of electronic communications were delegated to the compliance department's e-surveillance group. JPMorgan had procedures for all employees, including supervisors, requiring annual self-attestation of compliance.

18.     JPMorgan, however, failed to implement a system of follow-up and review to determine that supervisors' responsibility to supervise was being reasonably exercised so that the supervisors could prevent and detect employees' violations of the books and records requirements. While permitting employees to use approved communications methods, including on personal phones, for business communications, JPMorgan failed to implement sufficient monitoring to assure that its recordkeeping and communications policies were being followed. Even after the firm became aware of significant violations, the widespread recordkeeping failures and supervisory lapses continued with a significant number of JPMorgan employees failing to follow basic recordkeeping requirements.

### JPMorgan's Recordkeeping Failures Across Its Business

19.    JPMorgan failed to preserve records in accordance with Exchange Act requirements and its own policies and procedures.  The failures were widespread across its securities business and included improper preservation of WhatsApp messages, text messages, and emails.

20.    For example, an executive director and co-supervisor of the high grade credit trading desk launched a WhatsApp group chat entitled "Portfolio Trading/auto ex" on April 24, 2019, and invited the other nineteen members of the trading desk to join.

4

21.     From April 24 through December 16, 2019, at least 1,100 messages were sent among the chat group.  Nearly all of the chat messages concerned the firm's securities business, including investment strategy; discussions of client meetings; and communications about market color, analysis, activity trends or events.

22.     In addition, from at least November 2019 through November 2020, an executive director who worked on the capital markets desk at JPMorgan texted with more than a hundred JPMorgan colleagues in various areas of the broker-dealer including the investment bank, and with dozens of managing directors and heads of several business lines.

23.     The executive director also texted with dozens of JPMorgan's customers, clients, third-party advisers, and market participants.

24.     In all, this executive director texted more than 2,400 times in the one-year period. His texts discussed various aspects of the high yield and leveraged loan capital markets business at JPMorgan, including the terms of the transactions JPMorgan was negotiating for its customers, and the timing and status of these transactions.

25.     Further, in connection with work performed on behalf of an investment banking client between at least January 2018 and November 2019, JPMorgan employees, including desk heads, managing directors, and other senior executives sent and received more than 21,000 securities business-related text and email messages using unapproved communications methods on their personal devices.  These messages were not preserved by JPMorgan.

26.     The messages reflect extensive discussion between and among senior-level JPMorgan executives and employees, customers, clients, third-party advisers, and other market participants about debt and equity underwriting issues.

### Commission Staff Learns of JPMorgan's Text Messages from Third Parties

27.     JPMorgan did not promptly produce business communications sent or received using unapproved communications methods to the staff in the course of Commission investigations.  As a result, Commission staff, in one or more instances, only learned of such evidence and sources of information through others.

28.     For example, during the course of an investigation of JPMorgan's role as an underwriter, Commission staff obtained communications from third parties that reflected numerous text messages with JPMorgan employees.

29.     Although such communications between JPMorgan and third parties were records relating to the business responsive to Commission subpoenas issued to JPMorgan, JPMorgan had not produced these text messages because they were held on personal devices and sent or received through unapproved communications methods.

30.     When questioned by Commission staff, counsel to JPMorgan confirmed that the firm had not collected or produced any text messages sent or received through unapproved communications methods on personal devices.  Approximately one year after receipt of the initial subpoena, and three months after the Commission staff alerted JPMorgan to the issue, JPMorgan began to produce such text messages and continued to do so for months thereafter. The text messages were responsive to the staff's initial subpoena.

31.     Later, JPMorgan informed the staff that certain text messages received or sent through unapproved communications methods on the personal devices of relevant individuals had been deleted and were unrecoverable.  The deleted and unrecoverable text messages included messages from the relevant timeframe and messages between multiple potentially relevant custodians.

### JPMorgan's Failure to Preserve Required Records
### Compromised and Delayed Commission Matters

32.     In none of the examples above did JPMorgan preserve the security business communications created by the text message, WhatsApp chat, or email communications in accordance with the requirements under the federal securities laws. This failure compromised and delayed Commission investigations.

33.     Some of the text messages at issue were highly relevant to the Commission staff's investigations.  Further, JPMorgan is unable to account for when and which text messages were deleted.

34.     By failing to search for, and produce, relevant text messages sent or received through unapproved communications methods and located on the personal devices of its employees, JPMorgan deprived the Commission of potential sources of evidence in various investigations, in addition to the ones described herein.  Moreover, in the above matters, the Commission expended significant additional resources to investigate JPMorgan's production failures which also delayed those investigations.

### JPMorgan's Violations and Failure to Supervise

35.     As a result of the conduct described above, JPMorgan willfully[2] violated Section 17(a) of the Exchange Act and Rules 17a-4(b)(4) and 17a-4(j) thereunder, which require broker-dealers to preserve for at least three years originals of all communications received and copies of all communications sent relating to its business as such, and furnish such records promptly to a Commission representative upon such representative's request.

---

[2]     "Willfully," for purposes of imposing relief under Section 15(b) of the Exchange Act "'means no more than that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)).

36.     As a result of the conduct described above, JPMorgan failed reasonably to supervise its employees with a view to preventing or detecting certain of its employees' aiding and abetting violations of the federal securities laws, within the meaning of Section 15(b)(4)(E) of the Exchange Act.

## JPMorgan's Remedial Efforts

37.     In determining to accept the Offer, the Commission considered remedial acts promptly undertaken by JPMorgan and cooperation afforded the Commission staff.

## Undertakings

38.     Prior to this action, JPMorgan enhanced its policies and procedures, and increased training concerning the use of approved communications methods, including on personal devices, and began implementing significant changes to the technology available to employees. As part of the remedial measures already in progress, and given the nature and the scope of the Commission's claims, JPMorgan has agreed to the following undertakings.

39.     Compliance Consultant.

a. JPMorgan shall retain, within thirty (30) days of the entry of this Order, the services of a compliance consultant ("Compliance Consultant") that is not unacceptable to the Commission staff. Prior to the entry of this Order, the Audit Committee of the Board of Directors of JPMorgan Chase & Co. retained the services of a consultant to address the issues described in this Order.  The Compliance Consultant may be the same consultant previously engaged by the Audit Committee. The Compliance Consultant's compensation and expenses shall be borne exclusively by JPMorgan.

b. The Audit Committee of the Board of Directors of JPMorgan Chase & Co. will oversee the work of the Compliance Consultant.

c. JPMorgan shall provide to the Commission staff, within sixty (60) days of the entry of this Order, a copy of the engagement letter detailing the Compliance Consultant's responsibilities, which shall include a comprehensive compliance review as described below. JPMorgan shall require that, within ninety (90) days of the date of the engagement letter, the Compliance Consultant conduct:

i. A comprehensive review of JPMorgan's supervisory, compliance, and other policies and procedures designed to ensure that JPMorgan's electronic communications, including those found on personal electronic devices, including without limitation, cellular phones ("Personal Devices"), are preserved in accordance with the requirements of the federal securities laws.

ii. A comprehensive review of training conducted by JPMorgan to ensure personnel are complying with the requirements regarding the preservation of electronic communications, including those found on Personal Devices, in

7

accordance with the requirements of the federal securities laws, including by ensuring that JPMorgan personnel certify in writing on a quarterly basis that they are complying with preservation requirements.

iii. An assessment of the surveillance program measures implemented by JPMorgan to ensure compliance, on an ongoing basis, with the requirements found in the federal securities laws to preserve electronic communications, including those found on Personal Devices.

iv. An assessment of the technological solutions that JPMorgan has begun implementing to meet the record retention requirements of the federal securities laws, including an assessment of the likelihood that JPMorgan personnel will use the technological solutions going forward and a review of the measures employed by JPMorgan to track employee usage of new technological solutions.

v. An assessment of the measures used by the firm to prevent the use of unauthorized communications methods for business communications by employees. This assessment should include, but not be limited to, a review of the firm's policies and procedures to ascertain if they provide for any significant technology and/or behavioral restrictions that help prevent the risk of the use of unapproved communications methods on Personal Devices (e.g., trading floor restrictions).

vi. A review of JPMorgan's electronic communications surveillance routines to ensure that electronic communications through approved communications methods found on Personal Devices are incorporated into JPMorgan's overall communications surveillance program.

vii. A comprehensive review of the framework adopted by JPMorgan to address instances of non-compliance by JPMorgan employees with JPMorgan's policies and procedures concerning the use of Personal Devices to communicate about JPMorgan business in the past. This review shall include a survey of how JPMorgan determined which employees failed to comply with JPMorgan policies and procedures, the corrective action carried out, an evaluation of who violated policies and why, what penalties were imposed, and whether penalties were handed out consistently across business lines and seniority levels.

d. JPMorgan shall require that, within forty-five (45) days after completion of the review set forth in sub-paragraphs c.i. through c.vii. above, the Compliance Consultant shall submit a detailed written report of its findings to JPMorgan and to the Commission staff (the "Report"). JPMorgan shall require that the Report include a description of the review performed, the names of the individuals who performed the review, the conclusions reached, the Compliance Consultant's recommendations for changes in or improvements to JPMorgan's policies and procedures, and a summary of the plan for implementing the recommended changes in or improvements to JPMorgan's policies and procedures.

e. JPMorgan shall adopt all recommendations contained in the Report within ninety (90) days of the date of the Report; provided, however, that within forty-five (45) days after the date of Report, JPMorgan shall advise the Audit Committee and the Compliance Consultant and the Commission staff in writing of any recommendations that JPMorgan considers to be unduly burdensome, impractical, or inappropriate. With respect to any recommendation that JPMorgan considers unduly burdensome, impractical, or inappropriate, JPMorgan need not adopt such recommendation at that time, but shall propose in writing an alternative policy, procedure, or disclosure designed to achieve the same objective or purpose.

f. As to any recommendation concerning JPMorgan's policies or procedures on which JPMorgan and the Compliance Consultant do not agree, JPMorgan and the Compliance Consultant shall attempt in good faith to reach an agreement within sixty (60) days after the date of the Report. Within fifteen (15) days after the conclusion of the discussion and evaluation by JPMorgan and the Compliance Consultant, JPMorgan shall require that the Compliance Consultant inform JPMorgan and the Commission staff in writing of the Compliance Consultant's final determination concerning any recommendation that JPMorgan considers to be unduly burdensome, impractical, or inappropriate. JPMorgan shall abide by the determinations of the Compliance Consultant and, within sixty (60) days after final agreement between JPMorgan and the Compliance Consultant or final determination by the Compliance Consultant, whichever occurs first, JPMorgan shall adopt and implement all of the recommendations that the Compliance Consultant deems appropriate.

g. JPMorgan shall cooperate fully with the Compliance Consultant and shall provide the Compliance Consultant with access to such of JPMorgan's files, books, records, and personnel as are reasonably requested by the Compliance Consultant for review.

h. To ensure the independence of the Compliance Consultant, JPMorgan: (1) shall not have the authority to terminate the Compliance Consultant or substitute another independent compliance consultant for the initial Compliance Consultant, without the prior written approval of the Commission staff; and (2) shall compensate the Compliance Consultant and persons engaged to assist the Compliance Consultant for services rendered under this Order at their reasonable and customary rates.

i. JPMorgan shall require the Compliance Consultant to enter into an agreement that provides that for the period of engagement and for a period of two years from completion of the engagement, the Compliance Consultant shall not enter into any employment, consultant, attorney-client, auditing, or other professional relationship with JPMorgan, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement shall also provide that the Compliance Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Compliance Consultant in performance of his/her duties under this Order shall not, without prior written consent of the Commission

9

staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with JPMorgan, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement.

j. The Report and related written communications of the Compliance Consultant will likely include confidential financial, proprietary, competitive business or commercial information.  Public disclosure of the reports could discourage cooperation, impede pending or potential government investigations or undermine the objectives of the reporting requirement.  For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except (1) pursuant to court order, (2) as agreed to by the parties in writing, (3) to the extent that the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities, or (4) is otherwise required by law.

40.     One-Year Evaluation. JPMorgan shall require the Compliance Consultant to assess JPMorgan's program for the preservation, as required under the federal securities laws, of electronic communications, including those found on Personal Devices, commencing one year after submitting the report required by Paragraph 39.d above. JPMorgan shall require this review to evaluate JPMorgan's progress in the areas described in Paragraph 39.c.i-vii above.  After this review, JPMorgan shall require the Compliance Consultant to submit a report (the "One Year Report") to JPMorgan and the Commission staff and shall ensure that the One Year Report includes an updated assessment of JPMorgan's policies and procedures with regard to the preservation of electronic communications (including those found on Personal Devices), training, surveillance programs, and technological solutions implemented in the prior year period.

41.     Reporting Discipline Imposed.  For two years following the entry of this Order, JPMorgan shall notify the Commission staff as follows upon the imposition of any discipline imposed by JPMorgan, including, but not limited to, written warnings, loss of any pay, bonus, or incentive compensation, or the termination of employment, with respect to any employee found to have violated JPMorgan's policies and procedures concerning the preservation of electronic communications, including those found on Personal Devices:  at least 48 hours before the filing of a Form U-5, or within ten (10) days of the imposition of other discipline.

42.     Internal Audit.  In addition to the Compliance Consultant's review and issuance of the One Year Report, JPMorgan will also have its Internal Audit function conduct a separate audit(s) to assess JPMorgan's progress in the areas described in Paragraph 39.c.i-vii above.  After completion of this audit(s), JPMorgan shall ensure that Internal Audit submits a report to the Audit Committee of the Board of Directors of JPMorgan Chase & Co and the Commission staff.

43.     Cooperation. JPMorgan shall cooperate fully with the Commission in any and all investigations, litigations or other proceedings relating to or arising from the matters described in this Order.  JPMorgan shall produce, without service of a notice or subpoena, any and all documents and other materials and information concerning the use and preservation of electronic communications as requested by the Commission, provided that such information is not privileged.  JPMorgan shall use its best efforts to cause Respondent's current and former

10

employees, officers, and directors to be interviewed by, or to appear and provide testimony to, the Commission staff at such times and places as the staff requests upon reasonable notice.

44.     Recordkeeping. JPMorgan shall preserve, for a period of not less than six (6) years from the end of the fiscal year last used, the first two (2) years in an easily accessible place, any record of compliance with these undertakings.

45.     Deadlines. For good cause shown, the Commission staff may extend any of the procedural dates relating to the undertakings. Deadlines for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered to be the last day.

46.     In determining whether to accept the Offer, the Commission has considered these undertakings.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent JPMorgan's Offer.

Accordingly, pursuant to Sections 15(b) and 21C of the Exchange Act, it is hereby ORDERED that:

A.     Respondent JPMorgan cease and desist from committing or causing any violations and any future violations of Section 17(a) of the Exchange Act and Rule 17a-4 thereunder.

B.     Respondent JPMorgan is censured.

C.     Respondent JPMorgan shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $125,000,000 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3). If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

Payment must be made in one of the following ways:

(1)     Respondent may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)     Respondent may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)     Respondent may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

11

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying JPMorgan as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Richard Best, Regional Director, Securities and Exchange Commission, 200 Vesey Street, Brookfield Place, 4th Floor, New York, New York 10281-1022.

D.      Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, it shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

By the Commission.

Vanessa A. Countryman
Secretary

12