# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

September 2, 2022

Via ECF

Hon. Eric N. Vitaliano,
    United States District Judge,
        United States District Court,
            Eastern District of New York,
                225 Cadman Plaza East,
                    Brooklyn, NY 11201.

Re:   *In re JPMorgan Chase & Co. Securities Litigation*,
      No. 1:20-cv-05124-ENV-RML (E.D.N.Y.)

Dear Judge Vitaliano:

I write on behalf of Defendants JPMorgan Chase & Co. ("JPM"), James Dimon and Marianne Lake in response to Plaintiffs' letter of August 23, 2022 (ECF No. 48) ("Letter" or "Lr.").[1]  Plaintiffs' Letter is an improper attempt to bolster the SAC's deficient allegations by pointing to the August 10, 2022 criminal convictions of Michael Nowak and Gregg Smith for spoofing, commodities fraud, wire fraud and attempted price manipulation.  (Lr. 1, 3.)  Even setting aside that information outside the pleadings cannot be considered in response to a motion to dismiss,[2] Plaintiffs' Letter does nothing to overcome the deficiencies identified in that motion.  "Spoof" orders to buy or sell precious metals futures contracts simply do not constitute material "misstatements" for purposes of a Section 10(b) claim because they are placed on an anonymous exchange for "a matter of seconds" and do not relate to the value of *JPM* or its stock.  (MTD at 36-41.)  Plaintiffs' last-ditch reliance on the Nowak and Smith trials only underscores the profound disconnect between Plaintiffs' spoofing-related allegations and the elements of a securities fraud claim.

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning ascribed to them in the JPM Defendants' fully-briefed motion to dismiss (ECF No. 37-1) ("MTD"), and internal quotation marks are omitted.

[2] "Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Leason Ellis LLP* v. *Patent & Trademark Agency LLC*, 2014 WL 3887194, at *3 (S.D.N.Y. July 2, 2014).

Hon. Eric N. Vitaliano                                                                                                                      -2-

*First*, Plaintiffs argue that the convictions "mean there is no longer any doubt that each of the Trader Defendants acted with . . . scienter." (Lr. 1.)[3] Plaintiffs are wrong. For starters, Plaintiffs ignore that the criminal charges against Nowak and Smith related to transactions that *preceded* the Class Period in this case. Thus, the convictions themselves do not support any claim regarding alleged "spoofed" orders placed during the Class Period.[4] More fundamentally, Plaintiffs' scienter argument confuses the elements of a criminal charge with the elements of a securities fraud claim. At the criminal trial, the government charged Nowak and Smith with defrauding other futures traders, not JPM shareholders. Plaintiffs here similarly allege that the Trader Defendants' "scheme of 'spoofing'" was aimed at "defraud[ing] market participants in the precious metals futures markets," not JPM shareholders. (SAC ¶ 4.) It is settled law in this Circuit that an allegation that a company was "actively engaged in duping other institutions for the purposes of gaining at the expense of those institutions" is insufficient to allege an intent "to defraud its own investors." *ECA, Local 134 IBEW Joint Pension Trust of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009). Accordingly, the "intent" element of the criminal convictions do not relate to—let alone support—Plaintiffs' "scienter" allegations here.

*Second*, Plaintiffs assert—without elaboration—that the convictions somehow "support a finding that each of the Trader Defendants' spoofed trades were materially false and misleading statements that were made by agents of JPM to benefit the Company." (Lr. at 1.) But the criminal trial did not even purport to address whether a "spoof" order is a "misstatement" actionable under the securities laws, and as the JPM Defendants demonstrated in the MTD, "spoof" orders cannot be material misstatements because Plaintiffs do not allege any connection between anonymous orders to buy or sell precious metals futures and information about JPM's stock. (MTD at 36-37.) Nor do Plaintiffs allege facts to show how a single trader's order in a specific futures contract on a specific day could have been material to JPM shareholders. (*Id.* at 37-38.)

*Third*, Plaintiffs recite a series of purported "previously unknown facts" the "criminal trial revealed" that supposedly "support a finding of scienter against defendants Nowak, Smith, and JPM." (Lr. 2-3.) Even if the Court were to consider these extrinsic facts on a motion to dismiss (and it should not), none of these facts lend any support to Plaintiffs' scienter allegations.

---

[3] As Plaintiffs acknowledge, Nowak and Smith were acquitted on RICO and conspiracy charges. (Lr. 3.) Although Plaintiffs strain to argue otherwise, those acquittals undermine Plaintiffs' loss causation allegations based on the RICO charges as well as their purported "scheme liability" claim, which, as the JPM Defendants have shown, is not alleged in the SAC, let alone adequately pled. (ECF No. 39 at 9-10.)

[4] Plaintiffs concede that any securities claim arising out of "spoof" orders placed prior to the Class Period are barred by the five-year statute of repose. (ECF No. 39 at 8 n.5.)

Plaintiffs first assert that, in August 2015, Nowak was included on an email between "compliance personnel" and unidentified "senior executives" stating that "JPMorgan's management continued to analyze and scrutinize Smith's trading." (Lr. 2.) Plaintiffs argue that this document "demonstrat[es] that JPM senior executives were aware of spoofing by Smith." (*Id.*) This document does not demonstrate scienter as to any JPM Defendant. At most, the document relates to conduct by a single trader; it does not say anything about any widespread spoofing conduct that could have given rise to some duty to disclose. Further, Plaintiffs concede that neither Dimon nor Lake were copied on this email, and Plaintiffs do not even attempt to allege that Nowak or any of the "senior executives" copied on the email held positions such that their knowledge could be imputed to JPM. In any event, Plaintiffs' own allegations refute the contention that "analy[sis]" of Smith's trading in August 2015 by unidentified members of "JPMorgan's management" meant that JPM was somehow "aware of spoofing by Smith." Plaintiffs themselves allege that, when interviewed about his trading, "Smith lied to CME investigators" and stated that the trading in question "did not involve spoofing" (SAC ¶ 177), suggesting that "JPMorgan's management" was similarly misled.[5]

Plaintiffs next assert that the trial showed that Trunz's trading "triggered internal surveillance alerts within JPM's compliance and human resources functions by no later than August 2016." (Lr. 2.) Again, this adds nothing to Plaintiffs' scienter allegations. Plaintiffs do not allege that Dimon, Lake or any other senior officer of JPM was ever aware of these "internal surveillance alerts" or that anyone failed to address them.

Lastly, Plaintiffs cite (i) a motion to compel filed by Smith against "JPMorgan Chase & Co." to "obtain documents relevant to his defense," and (ii) the email domain of the Corporate Secretary in an apparent attempt to cure a fundamental defect in the SAC: that the Trader Defendants were not even employees of JPM (each was employed by JPMCB), let alone "officers" of JPM. (MTD at 8, 32 n.15, 37 n.17.) These arguments are easily disposed of. On its face, the motion to compel was directed at JPM and its "affiliate" JPMCB (Crim. ECF 519-1), and the fact that JPM stated in response to the subpoena that unidentified individuals at "JPMorgan" became "aware" that the "CME had initiated an investigation into Mr. Smith's trading" in September 2013 (Lr. 3) does not come close to showing that Dimon, Lake or any senior officer at JPM was aware of widespread spoofing conduct that could have given rise to a duty to disclose. Equally meaningless is Plaintiffs' reliance on the fact that the PM Desk and the Corporate Secretary shared a common email domain name. This says nothing at all about what entity employed the Trader Defendants.

Accordingly, the SAC should be dismissed with prejudice.

---

[5] For the same reasons, Plaintiffs' allegation that John Tribolati was copied on "at least 11 emails that discussed the CME's investigation into Smith" (Lr. 2) is unavailing.

Hon. Eric N. Vitaliano -4-

Respectfully submitted,

*/s/ Robert A. Sacks*

Robert A. Sacks

Cc: All Counsel of Record (via ECF)